Hillsborough,  }
March 4, 1913. }

### ALBERTINE LATULIPPE v. NEW ENGLAND INVESTMENT CO. & a.

An agreement by a corporation to repurchase the stock issued to a shareholder is *ultra vires;* but the company cannot repudiate the burden of such a contract while retaining its benefits.

A promise to pay a sum certain upon the promisee forbearing to bring suit is sufficient to sustain an action of assumpsit only when made in settlement of an honest dispute between the parties.

In the absence of an estoppel, one who was induced to purchase stock in a corporation through false representations of its officers may assert a claim as a creditor, and not as a shareholder, in the event of the company's insolvency.

ASSUMPSIT. The declaration alleged that the plaintiff was induced to purchase stock of the defendant corporation by false representations on the part of its president and general manager; that it was agreed when she bought the stock that the same should be repurchased by the corporation within six months upon request; that a request for repurchase having been made in accordance with the agreement, the defendant corporation promised to pay her $1,000 upon her forbearing to bring suit for fifteen days. The defendant demurred. Transferred without ruling from the September term, 1912, of the superior court by *Pike*, J.

*Aime E. Boisvert* and *Cyprien J. Belanger*, for the plaintiff.

*Harry E. Loveren* and *Taggart, Burroughs & Wyman*, for the defendant.

YOUNG, J.   It is true that the defendant's agreement to repurchase the plaintiff's stock was *ultra vires* (*White Mts. R. R.* v. *Eastman*, 34 N. H. 124; *Currier* v. *Company*, 56 N. H. 262), but that is immaterial in this case.   The defendant has the money the plaintiff paid for the stock; and a corporation cannot retain the benefits and repudiate the burdens of even *ultra vires* contracts.   *Trust Co.* v. *Company*, 70 N. H. 118; *Manchester & Lawrence R. R.* v. *Railroad*, 66 N. H. 100, 127; *Conn. River Savings Bank* v. *Fiske*, 60 N. H. 363.   The test to determine whether the defendant's promise to pay the plaintiff $1,000 is legal is to inquire as to why it was made—not as to whether the original contract was valid.   *Sanborn* v. *French*, 22 N. H. 246.

If there was an honest dispute between the parties and this promise was made in settlement of it, the promise is valid (*Flannagan* v. *Kilcome*, 58 N. H. 443); and it is immaterial whether the dispute related to the validity of the agreement to repurchase, or to the defendant's liability on account of the representations it made to induce the plaintiff to purchase the stock.   On the other hand, if her threat to sue was in the nature of blackmail, or if the promise was not made to settle a dispute, it will not sustain this action.   That is, if. the promise was made to put off the day of payment, and not as a substitute for the defendant's liability on its agreement to repurchase her stock, or to pay the damages she sustained because of the false representations it made to induce her to purchase it, the promise will not sustain this action; for in so far as the defendant's liability on either of these grounds is concerned, the parties stand just as they would if the promise had not been made.   *Bedford's Ex'r* v. *Chandler*, 81 Vt. 270.

If the plaintiff was induced to part with her money by the defendant's false representations, she is not one of its shareholders, but one of its creditors, unless she has done something which estops her to make that claim.   If she is a creditor it is of no consequence how she became one.   In other words, if it is true that nine tenths of the defendant's shareholders were induced to purchase their stock by its false representations, it comes to nothing in so far as the plaintiff's right to maintain this action is concerned; and that will also be true of her right to enforce her judgment in full if neither the defendant nor its creditors take the steps necessary to insure a division of its property among all its creditors.

*Case discharged.*

All concurred.