[Cite as *Lawrence v. Klaehn*, 2016-Ohio-5696.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Blanca Lawrence, Executrix of
the Estate of Kathryn V. Wohlers, Deceased

Court of Appeals No. OT-15-043

 Appellant

Trial Court No. 14 CV 365H

v.

John Klaehn, et al.

**<u>DECISION AND JUDGMENT</u>**

 Appellees

Decided: September 2, 2016

* * * * *

Andrew R. Mayle, Jeremiah S. Ray, and Ronald J. Mayle, for appellant.

Alan R. McKean and Martin D. Carrigan, for appellee.

* * * * *

**JENSEN, P.J.**

 **{¶ 1}** Plaintiff-appellant, Blanca Lawrence, Executrix of the Estate of Kathryn V. Wohlers, deceased, appeals the September 11, 2015 judgment of the Ottawa County Court of Common Pleas granting partial summary judgment in favor of defendant-appellee, Neil Atwater.  For the reasons that follow, we affirm the trial court judgment.

# I.  BACKGROUND

{¶ 2} Alan Atwater rented a home from his grandfather, defendant-appellee, Neil Atwater, and resided there with his wife and three young children.  The home, located on Leutz Road, in Oak Harbor, Ohio, was next door to the farm of Kathryn Wohlers.  Kathryn, an elderly woman, became very close with Alan.  He helped her with chores on her 80-acre property and spent time with her.  In early 2010, Alan proposed purchasing Kathryn's property on land contract with the idea that Kathryn would continue to live there for the rest of her life and Alan and his wife would assist her as needed.  Kathryn agreed to this proposal.  On June 14, 2010, they entered into a land installment contract.  The purchase price was the appraised value of $200,000, with Alan to pay an initial sum of $15,000 by September 1, 2010, and 13 annual installments of varying amounts for the remaining balance.  The agreement included a debt-forgiveness provision that provided as follows:

> If the death of Vendor should occur before the final payment is made by Vendee under the terms of this contract, Vendee shall be considered to have paid in full on said property.

{¶ 3} The agreement provided that Kathryn Wohlers "is called the Vendor," and Alan Atwater "is called the Vendee."

{¶ 4} The land installment contract was filed with the county recorder on June 22, 2010, along with a Transfer on Death Designation ("TODD") Affidavit, filed pursuant to

2.

R.C. 5302.22, providing for the transfer of full interest in the property to Alan upon Kathryn's death. Kathryn was 88 years old when the agreement was executed.

{¶ 5} On April 16, 2011, Alan murdered his wife and three young children, and committed suicide.[1] On September 2, 2011, the Ottawa County probate court granted an application to assign Alan's interest in the land installment contract to Neil in consideration of the sum of $10,000. Neil signed an acceptance of the assignment and Kathryn signed a consent to the assignment on September 21, 2011. The assignment was filed with the recorder's office on September 28, 2011.

{¶ 6} On August 25, 2014, Kathryn executed a new TODD Affidavit in favor of plaintiff-appellant, Blanca Lawrence. She executed a will on the same date, designating Lawrence as her sole beneficiary and describing her as her "close friend" and "caregiver." Kathryn also purported to execute an "addendum" to the June 22, 2010 land installment contract and to the September 28, 2011 assignment of interest in the land contract. This addendum revoked the debt-forgiveness provision recited above, and specifically provided that upon Kathryn's death, the entire outstanding balance would become due and owing to her estate. There was a space for Neil's signature, however, Neil never signed the document.

{¶ 7} On November 7, 2014, Kathryn filed the present action. She asserted claims for breach of contract, unjust enrichment, and conversion, and she claimed the contract

---

[1] Alan had a fourth child, a twelve-year-old girl, who survives him.

3.

was void as against public policy. Kathryn died on December 3, 2014, and Neil's attorney filed a suggestion of death two days later. Lawrence was substituted as the plaintiff in this case. She filed an amended complaint on May 4, 2015.

{¶ 8} In her amended complaint, Lawrence contended that there was no consideration given for the debt-forgiveness provision, the provision was not assignable, and Kathryn did not want Neil to receive the property outright without paying the full value. She asserted four claims. In count I, she claimed that the debt-forgiveness provision was invalid. In count II, she sought a declaratory judgment that the debt-forgiveness provision failed to comply with requirements of a testamentary document and was, therefore, invalid; that Neil is obligated to pay the full amount for the property; that Neil breached the land installment contract by failing to remit the December 1, 2011 payment along with the December 1, 2014 payment, and that if the debt-forgiveness provision was valid, it was personal to Alan and was not assignable. In count III, she alleged that Neil breached the contract by failing to remit the December 1, 2011, and December 1, 2014 payments. And in count IV, she asserted that Neil was unjustly enriched by failing to make these payments.

{¶ 9} Neil asserted four counterclaims. In count I, he sought a declaratory judgment that the August 25, 2014 TODD is void; that the land contract is fully enforceable; that Neil is considered to have paid in full and to have fully performed under the contract; that Lawrence is in breach for failing to convey a proper deed to him; and that Neil is the sole owner of the property. In count II, he requested injunctive relief

4.

prohibiting Lawrence from pursuing threatened criminal prosecution for Neil's refusal to vacate the property. In count III, he sought to quiet title. And in count IV, he asserted a claim for slander of title.

{¶ 10} Neil moved for summary judgment on Lawrence's claims. He contended that the August 25, 2014 TODD was subject to the land contract and that the assignment of the land contract was proper. He cited R.C. 5301.331 which provides that "The assignment by the vendee * * * shall transfer the right held by the vendee under the land contract in the premises described in the contract unless otherwise stated in the land contract or in the assignment." Neil pointed out that although not required, Kathryn consented to the assignment. He also insisted that the debt-forgiveness provision was a contractual obligation and not an attempt to make a testamentary gift. He disputed that any amounts remained due and owing under the contract.

{¶ 11} Lawrence opposed Neil's motion and also moved for partial summary judgment. She maintained that the debt-forgiveness provision was enforceable only by Alan because the contract provided that *he*—not his heirs, successors, administrator, executor, or assign—was the "Vendee." She contended that while R.C. 5301.331 permits the assignment of a land contract, it does not permit the assignee to rewrite the contract to expand the definition of "Vendee." She claimed that the parties included that provision of the agreement with an appreciation of their relative ages and life expectancies and that to allow another person to step into either parties' shoes would frustrate the parties' expectations and intent. In addition to this, Lawrence claimed that because the debt-

forgiveness provision came into play only in the event of the vendor's death, it was an invalid attempted testamentary disposition of a debt and must be considered a gift. She argued that without a validly-executed will, such a gift is of no legal effect, and she maintained that to conclude otherwise would frustrate the Ohio public policy underlying R.C. 2115.11 (pertaining to debt forgiveness in a will). Finally, she insisted that there was no compliance with R.C. 2113.50 (addressing the completion, cancellation, or alteration of a decedent's contract for the purchase of an interest in real estate).

{¶ 12} On September 11, 2015, the trial court found as follows:

(1) the Land Installment Contract that was entered into by Kathryn Wohlers and Alan Atwater is a valid and enforceable contract[;]

(2) the Forgiveness Clause in the Land Installment Contract does not constitute a Testamentary Gift but rather an enforceable provision of a valid contract[;]

(3) the Transfer on Death Designation Affidavit which was executed on August 14, 2014 [sic], and attempted to transfer the property to Lawrence upon Wohlers' death was subject to the Land Installment Contract, and, therefore, is null and void, and unenforceable[;]

(4) the Assignment by the Executrix of Alan Atwater's estate of Alan's interest in the Land Installment Contract, including the Forgiveness Clause, to Neil Atwater was valid and enforceable[;]

6.

(5) Neil Atwater is liable to the Wohlers [sic] estate for any payments under the Land Installment Contract that were unpaid and due prior to Wohlers' death in an amount to be agreed upon by the parties but if they cannot agree to be determined by the court, which amount shall include the payment that was due on December 1, 2014, that was tendered by Neil Atwater but returned by Wohlers when the validity of the Forgiveness Clause and the Assignment were in dispute[;]

(6) pursuant to the terms of the Land Installment Contract, once that payment is made, Neil Atwater shall be considered to have paid in full and will be the sole legal and equitable owner of the property at 796 Leutz Road, Oak Harbor, Ohio, and will be entitled to a conveyance of the property to him free and clear of any claims by Plaintiff.

{¶ 13} The court granted summary judgment to Neil on counts I and II of Lawrence's amended complaint, and it granted summary judgment to Lawrence to the extent that it determined that Neil owed amounts due on the land installment contract prior to Wohlers' death. Lawrence appealed, and she assigns the following errors for our review.

First assignment: The trial court permitted Neil Atwater to enforce a debt-cancellation provision in a land installment contract even though the provision on its face does not apply to him. The purpose of the provision was to forgive someone else's debt and therefore the trial court's ruling that

Neil Atwater's own debt must be forgiven is erroneous and should be reversed.

Second assignment: The disputed debt-forgiveness provision is an invalid attempted testamentary disposition of a debt and therefore the trial court erred in enforcing it even if it otherwise applied to appellee.

## II. STANDARD OF REVIEW

{¶ 14} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 15} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate

8.

the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III. LAW AND ANALYSIS

{¶ 16} Lawrence raises two assignments of error. Her first assignment of error requires us to determine whether the trial court erred in rejecting her position that the debt-forgiveness provision of the land contract was personal only to Alan and could not be assigned to Neil. Her second assignment of error requires us to determine whether the trial court erred in its determination that the debt-forgiveness provision was not an invalid attempted testamentary disposition.

### A. Was the Debt-Forgiveness Provision Assignable?

{¶ 17} Lawrence makes numerous arguments in support of her claim that the debt-forgiveness provision was personal to Alan and not assignable to Neil: (1) the agreement defines Kathryn as "Vendor" and Alan as "Vendee"—it does not define "Vendee" to

9.

include Alan's successors or assigns, nor does it include any statement that the agreement is binding on or inures to the benefit of the parties' heirs and assigns; (2) the applicability of the debt-forgiveness provision required that Alan himself be in full compliance with the agreement and that he be alive to accept the deed; (3) even if the contract could be assigned, the plain terms of the debt-forgiveness clause cannot be rewritten to extend to others besides Alan; (4) the agreement could easily have been written to extend to a successor to the contract, but it was not; and (5) the trial court considered an offer of compromise in violation of Evid.R. 408.

{¶ 18} The construction of written contracts is a matter of law. *Indus. Heat Treating Co., Inc. v. Indus. Heat Treating Co.,* 104 Ohio App.3d 499, 508, 662 N.E.2d 837 (6th Dist.1995), citing *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraphs one and two of the syllabus. "In construing a written agreement, our objective is to ascertain and give effect to the intent of the parties." *Cont'l Tire N. Am. v. Titan Tire Corp.*, 6th Dist. Williams No. WM-09-010, 2010-Ohio-1355, ¶ 24.

{¶ 19} R.C. 5301.331 expressly permits the assignment of a land contract *unless otherwise stated in the land contract*. When an assignment is made, the vendee's rights described in the contract are transferred to the assignee. R.C. 5303.331. Here, there is nothing in the land installment contract that prohibited assignment and nothing to suggest that only certain provisions of the agreement were subject to assignment while others were not. While the agreement explains that Kathryn is "*called the Vendor*" and Alan is

10.

"*called the Vendee,*" this appears to have been done for ease of reference—not as a mechanism for preventing assignment of the agreement. (Emphasis added.) When the contract was assigned to Neil, he assumed all the obligations and rights of the vendee. This means that he assumed the benefit of the debt-forgiveness provision.

{¶ 20} Lawrence insists that the agreement could easily have been written to extend to a successor to the contract, and she urges that the failure to include such a provision means that the debt-forgiveness provision does not extend to a successor. But she fails to recognize that the converse is also true—the contract could easily have been written so that the provision specifically did *not* apply in the case of assignment. Given that R.C. 5301.331, by default, permits assignment, it was incumbent on the parties to provide otherwise if that was their intent. This is true regardless of the parties' expectations about each other's ages and relative life expectancies.

{¶ 21} We also reject Lawrence's contention that the trial court improperly considered an offer of compromise in violation of Evid.R. 408. The purported "offer to compromise" is the August 25, 2014 document titled "Addendum to Land Installment Contract Recorded on June 22, 2010." We are not necessarily persuaded that this document was, in fact, an offer of compromise, however, it is obvious that the trial court did not consider this document in determining the merits of the parties' claims. It merely included it in its recitation of the chronology of the case.

{¶ 22} Finally, R.C. 5302.23(B)(7)(a), "[a] transfer on death beneficiary takes only the interest that the deceased owner or owners of the interest held on the date of

11.

death, subject to all encumbrances, reservations, and exceptions." *See In re Estate of Ball*, 7th Dist. Belmont No. 15 BE 0004, 2016-Ohio-4917, ¶ 28 ("[A] transfer-on-death beneficiary takes the identical interest that the deceased grantor held on the date he or she died.") So even though Kathryn revoked the TODD in favor of Alan, and filed a new one in favor of Lawrence, the only interest transferred to Lawrence was Kathryn's interest on the date of her death. On the date of Kathryn's death, the obligation of the vendee to make further payments under the land contract ceased and title was required to be transferred to the vendee. Thus, Lawrence effectively had no interest in the property because Kathryn no longer had an interest in it.

{¶ 23} We find Lawrence's first assignment of error not well-taken.

**B. Was the Debt-Forgiveness Provision an Invalid Testamentary Disposition?**

{¶ 24} Lawrence argues that because the debt-forgiveness provision took effect only in the event of Kathryn's death, it was an invalid testamentary disposition. She argues that her position is supported by Ohio Supreme Court case law and that several statutes would be rendered pointless if the debt owed under the land contract was extinguished upon Kathryn's death.

{¶ 25} We begin by addressing the case relied on by Lawrence—*Hamor v. John R. Moore's Administrators*, 8 Ohio St. 239 (1858). In *Hamor,* the decedent, who died intestate, had executed the following:

> For value received, I promise to pay to Mrs. Hamor, wife of John
>
> Hamor, the sum of $300, as a small recompense for the kindness shown to

12.

me by her. The executors of my last will and testament are hereby directed to pay the above to Mrs. H., or her sons, Moses and John, after my decease. *Id.* at 242.

{¶ 26} The court held, among other things, that this was an invalid testamentary disposition because it was not executed in the manner required of a testamentary disposition. *Id.* Lawrence insists that this case is on point and is controlling.

{¶ 27} Neil, on the other hand, relies on *Twyman v. Wood,* 61 Ohio App. 229, 22 N.E.2d 495 (4th Dist. 1938). In *Twyman,* plaintiff's decedent entered into a land contract with defendants that contained the following provision:

> For the sum of one dollar cash recd. in hand I am giving this contract to C. L. Wood agt. for Dallis and Bernice Wood they are to have the 225 acres of land in Pebble township known as the Joe Huggins farm for the sum of 38 hundred dollars with some farm tools 3 horses they are to pay $ 200 down and the bal. at $ 250 per year plain notes without any interest and in case of my death at any time the debt is paid in full and they are not to pay any more and I further say that this property is my own and no one has any interest and it is clear of any debt or mortgages. *Id.* at 231.

{¶ 28} The court rejected plaintiff's argument that this was an invalid testamentary disposition. It explained:

> The parties had a legal right to enter into this kind of a contract if they so desired. Mrs. Twyman had a right to accept $ 3,300 for the

13.

property instead of $ 3,800.  She had a legal right to accept even less if she cared to do so.  We know of no reason why Mrs. Twyman could not enter into a contract to forgive the payment at some future time of one or more of the notes.  This was not an attempted testamentary disposition of property.  It was not a gift but was one of the terms of the sale fixing the amount of the consideration.  What element of a valid and binding contract is wanting?  The facts in this case are not to be confused with the facts in some of the authorities cited by counsel for the plaintiff.  In those cases there was an attempted gift while in this case there is no attempted gift at all but a mere agreement upon a proper consideration to forgive the payment of part of the purchase price of the property at some future time.  As the plaintiff obtained the note after maturity he gained no superior right by its transfer to him.  He is not in the position of an innocent holder for value for he had knowledge of all the facts and circumstances of the transaction.  *Id.* at 233.

*See also Bonnell v. Bonnell,* 5th Dist. Ashland No. 04COA049, 2005-Ohio-968, ¶ 19-20 (reaching the same conclusion as *Twyman* despite the fact that the decedent specifically stated that the debt-forgiveness should be "considered as a legacy").

{¶ 29} Lawrence argues that the *Twyman* court improperly ignored Ohio Supreme Court precedent in failing to apply *Hamor.*  We disagree.  *Twyman* involved a land installment contract with an exchange of consideration like the one at issue here; *Hamor*

14.

involved what essentially amounted to a mere gift of money to be distributed after his death. We are, therefore, persuaded that the debt-forgiveness provision in the land installment contract was valid and was not an invalid testamentary disposition.

{¶ 30} Lawrence also claims that R.C. 2115.11 prohibits enforcement of the debt-forgiveness provision. That statute provides that a "discharge or bequest, in a will, of a debt or demand of a testator * * * is not valid as against the decedent's creditors, but is only a specific bequest of that debt or demand. The amount of the debt or demand shall be included in the inventory of the credits and effects of the deceased * * *. Lawrence contends that the legislature carved out limited exceptions to this rule, including R.C. 5302.23, allowing for the transfer on death of a decedent's real property; R.C. 2131.13(G)(1), permitting the transfer on death of motor vehicles, watercraft, or outdoor motors; and R.C. 1709.09(A), permitting the transfer on death of a security. Because the Revised Code does not include a similar exception for debt-forgiveness clauses, she maintains that R.C. 2115.11 prohibits their enforcement under these circumstances. Neil claims that Lawrence waived this argument by failing to raise it in the trial court.

{¶ 31} Our review of the trial court record demonstrates that this argument was, in fact, raised in the trial court. Nevertheless, we conclude that there is no basis here for Lawrence to assert R.C. 2115.11. R.C. 2115.11 protects the creditors of an estate. Lawrence is not a creditor of the estate. She cannot assert R.C. 2115.11 simply to avoid the consequences of an agreement entered into by her benefactor.

15.

**{¶ 32}** Lawrence cites the following language contained in the assignment of the land contract: "Upon completion of the Land Installment Contract, the Seller/Vendor, Kathryn Wohlers, is authorized to execute and deliver to the Assignee herein, Neil F. Atwater, a deed for the lands and tenements described in the Land Installment Contract." She argues that the assignment provides that the deed will come from Kathryn—not her estate—thus it could not have been the intent that the debt-forgiveness provision would apply to Neil. However, the consent signed by Kathryn provides that she consented to the assignment to Neil of "all the rights, title, and interest of Vendee in and to the Land Installment Contract." The debt-forgiveness provision was one of the rights of the Vendee under the contract. It was properly assigned to Neil.

**{¶ 33}** Finally, Lawrence contends that R.C. 2113.50 was not followed. R.C. 2113.50 provides:

> When a person who has entered into a written contract for the purchase of an interest in real property dies before the conveyance of the interest to the person, the executor or administrator of the decedent's estate, the surviving spouse, any heir, or any devisee or legatee having an interest in the contract may file an application for authority to complete the contract in the probate court of the county in which the executor or administrator was appointed. Notice of the time of the hearing on the application shall be given to the surviving spouse and heirs, if the decedent died intestate, and to the surviving spouse and devisees or legatees having an interest in the

16.

contract, if the decedent died testate, to the executor or administrator, if not the applicant, and to all other persons having an interest in the real property that is the subject of the contract. If the court is satisfied that it would be for the best interests of the estate, it may, with the consent of the vendor, authorize the executor or administrator to complete the contract, pay to the vendor the amount due on the contract, and authorize a conveyance of the interest in the real property to the persons entitled to it. If, however, the court finds that the condition of the estate at the time of the hearing does not warrant the payment out of the estate of the amount due under the contract, it may authorize the persons entitled to the interest of the decedent in the contract to pay to the vendor the amount due on the contract. * * *

The executor or administrator, surviving spouse, any heir, or any devisee or legatee having an interest in the contract, may file a complaint for the alteration or cancellation of the contract in the probate court of the county in which the executor or administrator was appointed. If the decedent died intestate, the surviving spouse and heirs, and if the decedent died testate, the surviving spouse and devisees or legatees having an interest in the contract, and the executor or administrator, if not the plaintiff, together with the vendor, and all other persons having an interest in the real property that is subject to the contract, shall be made parties defendant. If the court is satisfied that it would be for the best interests of

17.

the estate, the court, with the consent of the vendor, may authorize the executor or administrator to agree to the alteration or cancellation of the contract and to execute and deliver the deeds or other instruments to the vendor that are required to make the order of the court effective. The deeds or other instruments that are executed and delivered pursuant to the court's order shall recite the order and be as binding on the parties to the suit as if made by the deceased prior to death.

{¶ 34} Again, we reject Lawrence's assertion of R.C. 2113.50 as a basis to avoid the terms of the contract. *See Gross v. Hoeffel*, 3d Dist. Paulding No. 11-83-13, 1985 Ohio App. LEXIS 6595, *9 (Apr. 30, 1985) ("By its terms [R.C. 2113.50] is not triggered by action of a vendor, stranger to an estate."). In any event, R.C. 2113.50 provides that "If the court is satisfied that it would be for the best interests of the estate, it may, with the consent of the vendor, authorize the executor or administrator to complete the contract, pay to the vendor the amount due on the contract, and authorize a conveyance of the interest in the real property to the persons entitled to it." It also provides that "If the court is satisfied that it would be for the best interests of the estate, the court, with the consent of the vendor, may authorize the executor or administrator to agree to the alteration or cancellation of the contract and to execute and deliver the deeds or other instruments to the vendor that are required to make the order of the court effective." Kathryn, in fact, consented to the assignment.

{¶ 35} We, therefore, find Lawrence's second assignment of error not well-taken.

18.

### III.  CONCLUSION

**{¶ 36}** We find Lawrence's assignments of error not well-taken and affirm the September 11, 2015 judgment of the Ottawa County Court of Common Pleas granting partial summary judgment to defendant-appellee, Neil Atwater.  Lawrence is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski., J.           _____
                                                         JUDGE

Arlene Singer, J.          

                                                         _____
James D. Jensen, P.J.                             JUDGE
CONCUR.

                                                         _____
                                                         JUDGE